FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 29, 2019

SEAN F. McAVOY, CLERK

1

2

3

4

5

6         UNITED STATES DISTRICT COURT
          EASTERN DISTRICT OF WASHINGTON

7    RICARDO P.,

8         Plaintiff,                       No. 1:17-CV-03206-RHW

9    v.                                    **ORDER GRANTING**
                                           **DEFENDANT'S MOTION FOR**
10   COMMISSIONER OF SOCIAL               **SUMMARY JUDGMENT**
     SECURITY,
11
12        Defendant.

13        Before the Court are the parties' cross-motions for summary judgment. ECF

14   Nos. 11 & 15. Plaintiff brings this action seeking judicial review pursuant to 42

15   U.S.C. § 405(g) of the Commissioner's final decision, which denied his application

16   for Disability Insurance Benefits under Title II of the Social Security Act. 42

17   U.S.C §§ 401-434. After reviewing the administrative record and briefs filed by the

18   parties, the Court is now fully informed. For the reasons set forth below, the Court

19   **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's

20   Motion for Summary Judgment.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 1**

# I.     Jurisdiction

Plaintiff filed his application for Disability Insurance Benefits on July 30, 2014. AR 100. His alleged onset date of disability is November 5, 2012.[1] AR 102, 243. Plaintiff's application was initially denied on December 18, 2014, AR 100-113, and on reconsideration on April 7, 2015, AR 114-129.

A hearing with Administrative Law Judge ("ALJ") Keith J. Allred occurred on November 1, 2016. AR 45. On February 22, 2017, the ALJ issued a decision finding Plaintiff ineligible for disability benefits. AR 15-37. On October 18, 2017, the Appeals Council denied Plaintiff's request for review, thus making the ALJ's ruling the final decision of the Commissioner. AR 1-8.

On December 11, 2017, Plaintiff timely filed the present action challenging the denial of benefits. ECF No. 3. Accordingly, Plaintiff's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

# II.     Five-Step Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42

---

[1] Because Plaintiff previously filed an application for Disability Insurance Benefits, which was denied and became administratively final on July 3, 2013, the relevant period for purposes of this case begins July 4, 2013. *See* AR 87-99.

U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are so severe that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. §§ 404.1572, 416.972. If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§ 404.1571, 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09,

416.908-09. If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether one of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of

performing other work; and (2) such work exists in "significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 676 F.3d 1203, 1206 (9th Cir. 2012).

### III. Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159. In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Even if the evidence in the record is susceptible to more than one rational interpretation, if inferences reasonably drawn from the

record support the ALJ's decision, then the court must uphold that decision. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here.  Plaintiff was 47 years old on the alleged date of onset. AR 35, 101. He attended school in Mexico through the 11th grade and can communicate in English. AR 28, 35, 51. Plaintiff has past work as a construction worker, primarily welding and hanging drywall. AR 28, 52.

## V.    The ALJ's Findings

The ALJ determined that Plaintiff was not under a disability within the meaning of the Act at any time from July 4, 2013 (the beginning of the relevant period, *see supra* footnote 1) through February 22, 2017 (the date the ALJ issued his decision). AR 36-37.

**At step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the beginning of the relevant period (citing 20 C.F.R. § 404.1571 *et seq*.). AR 24.

**At step two**, the ALJ found Plaintiff had the following severe impairments: spine disorder, affective disorder, and alcohol abuse disorder (citing 20 C.F.R. § 404.1520(c)). AR 24.

**At step three**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, Appendix 1. AR 25.

**At step four**, the ALJ found that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), including the abilities to lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit down for six hours throughout an eight-hour workday; and stand and/or walk for six hours throughout an eight-hour workday with normal breaks. AR 27. The ALJ further found that Plaintiff could occasionally climb ramps and stairs, but not ladders, ropes, or scaffolds; that he could occasionally balance, stoop, kneel, and crouch, but not crawl; and that he should avoid heavy vibration and hazards in the workplace. AR 27. With respect to Plaintiff's mental abilities, the ALJ found that Plaintiff was able to perform the basic mental demands of competitive, semi-skilled work, including the ability to understand, remember, and carry out detailed but not complex instructions. AR 27. The ALJ further found that Plaintiff could respond appropriately to supervision, co-workers, and usual work situations and deal with changes in a routine work setting. AR 27.

The ALJ found that Plaintiff was unable to perform any past relevant work, given his physical and psychological limitations. AR 35.

**At step five**, the ALJ found that in light of Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that he could perform. AR 36. These included a photocopy machine operator, a car wash attendant, and a cafeteria attendant. AR 36.

## VI.    Issues for Review

Plaintiff argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. ECF No. 11 at 1-2. Specifically, he argues the ALJ: (1) improperly discredited his subjective pain complaint testimony; (2) improperly evaluated the medical opinion evidence; (3) improperly assessed his residual functional capacity by failing to include all his restrictions; and (4) failed to apply Medical-Vocational Guidelines (Grid) Rule 201.10. *Id.* at 4.

## VII.   Discussion

**A.    The ALJ did not Improperly Reject Plaintiff's Subjective Complaints.**

Plaintiff argues the ALJ erred by discounting the credibility of his testimony regarding his subjective symptoms. ECF No. 11 at 7-9. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some

degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, the ALJ can reject the claimant's testimony about the severity of his symptoms only by offering "specific, clear, and convincing reasons" for doing so. *Id.*

Here, the ALJ found that the medically determinable impairments could reasonably be expected to produce some degree of the symptoms Plaintiff alleged. AR 28. However, the ALJ determined that Plaintiff's statements of intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. AR 28.

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

In this case, the ALJ found evidence of malingering, which is supported by the record. In his June 2014 Independent Medical Examination (IME), Dr. S. Daniel Seltzer examined Plaintiff's lumbar spine. AR 764. Dr. Seltzer noted that there was "almost no movement at all of the lumbar spine . . . [h]e just self-limits."

AR 764. Dr. Seltzer also attempted to examine Plaintiff's hips but noted this was "very difficult to assess again because there is self-limiting behavior." AR 765. Occupational therapist Jackie Earl indicated that Plaintiff was convinced he was unable to work and described his "overall disability outlook." AR 808-09. Physical therapist Amy Conrad noted that Plaintiff demonstrated "various levels of ability and pain at different times." AR 810. Affirmative evidence of malingering supports rejecting a claimant's testimony. *See Benton ex. el. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003).

In addition to malingering, the ALJ provided multiple clear and convincing reasons for discrediting Plaintiff's subjective complaint testimony. AR 27-30. First, the ALJ noted that Plaintiff's condition markedly improved after his April 2013 back surgery. AR 29. At his two-week follow-up appointment with his surgeon, Plaintiff had some low back pain but was able to stand up, sit down, and ambulate without difficulty. AR 733. Two months later, his surgeon noted that he was improving steadily and taking less pain medication, although he still had limited lumbar range of motion. AR 732. His pain at this time was 7/10. AR 732. Another two months later, in August 2014, Plaintiff's surgeon noted that he was still improving gradually and that his pain had decreased to 5/10. AR 730-31.

By January 2014, Plaintiff felt he had "improved significantly from his symptoms before surgery" and he denied any pain in his legs, AR 722—

contradicting his testimony at the hearing that his leg pain got worse after surgery. *See* AR 55. By this time, he improved to having moderate lumbar range of motion. AR 722. At the June 2014 IME with Dr. Seltzer, Plaintiff reported that the surgery "helped a whole lot." AR 758. He stated he went through rehabilitation, felt much stronger, and had less pain. AR 758. He stated his pain was 2/10 or 3/10 and the only pain medication he took was a muscle relaxant and ibuprofen. AR 758. Dr. Seltzer concluded that Plaintiff's conditions were at maximum medical improvement. AR 768. An ALJ may find a claimant's subjective symptom testimony not credible based on evidence of effective responses to treatment. *See*, *e.g.*, *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005); 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3).

Second, the ALJ reasoned that Plaintiff's allegations of completely debilitating physical limitations were inconsistent with his spinal examination findings, many of which were essentially normal. AR 30; *see* AR 718, 720, 726. An ALJ may discount a claimant's subjective symptom testimony when it is inconsistent with the medical evidence. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

Third, the ALJ found that Plaintiff's allegations of completely disabling limitations were belied by his daily activities. AR 30. For example, Plaintiff

reported to his psychologist, Dr. Andrew Whitmont, that he walked outdoors at least three times per week to deal with his mental stressors, *see* AR 751, which implies that he was more physically capable than he alleged. *See* AR 55-56. Activities inconsistent with the alleged symptoms—even when they suggest some difficulty functioning—are proper grounds for questioning the credibility of subjective allegations when the person claims a totally disabling impairment. *Molina*, 674 F.3d at 1113; *see also Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(3)(i).

Fourth, the ALJ properly discounted Plaintiff's credibility due to the discrepancies between his alleged limitations and his behavior during the hearing. *See* AR 30. Plaintiff testified that he had to change from standing to sitting every 10 to 15 minutes and had to be constantly moving, otherwise he would get cramps in his foot, hip, and leg. AR 54. However, at the hearing, the ALJ observed that he sat comfortably after the first 15 minutes and also never needed to stand. AR 30. An ALJ may rely on ordinary techniques of credibility evaluation, including the claimant's actions at the hearing if they are inconsistent with his or her complaints. *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985).

Finally, the ALJ discounted Plaintiff's subjective complaint testimony because he discontinued treatment. AR 31. Despite his allegations of completely debilitating mental conditions, Plaintiff was sporadic about taking his

antidepressant medication. AR 717, 944, 1068, 1075. During a July 2015

psychiatric IME, he stated he was "not interested in additional psychiatric

treatment." AR 1068. Importantly, Plaintiff also received a pension from the

Washington State Department of Labor & Industries on November 16, 2015—

meaning that he was at maximum medical improvement and no longer needed any

additional medical treatment.[2] AR 464. Accordingly, Plaintiff stopped seeking

medical treatment. AR 462, 1070. An ALJ may discount a claimant's subjective

complaints when treatment is inconsistent with the level of complaints or a

claimant is not following treatment prescribed without good reason. *Molina*, 674

F.3d at 1114; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). If a claimant's

condition is not severe enough to motivate them to follow the prescribed course of

treatment, this calls their alleged limitations into question. *Burch*, 400 F.3d at 681.

Plaintiff fails to explain how the ALJ erred in relying on any of the above

reasons for discrediting his subjective pain testimony. *See* ECF No. 11 at 8-9.

Instead, Plaintiff argues that the ALJ simply gave a "vague regurgitation" of the

medical evidence and then provided "conclusory statements" finding his testimony

---

[2] Plaintiff faults the ALJ for reasoning that his pension award meant that he no longer needed treatment. ECF No. 11 at 14-15. He argues this was "misleading and inaccurate." ECF No. 11 at 15. Contrary to Plaintiff's assertions, this is *precisely* what a pension award means— the Department of Labor & Industries does not award pensions to injured workers unless the worker is fixed, stable, and no longer in need of medical treatment. *See, e.g.*, *Wilson v. Dep't of Labor & Indus.*, 6 Wn. App. 902, 904, 496 P.2d 551 (1972). In fact, this is illustrated in this case, where all of Plaintiff's medical providers unanimously agreed that he was at maximum medical improvement by November 2015. *See* AR 768, 855, 1070, 1076, 1082.

not credible. ECF No. 11 at 8-9. As outlined above, this is incorrect—the ALJ discounted Plaintiff's subjective complaint testimony because there was evidence of malingering, and the ALJ also provided multiple additional clear and convincing reasons for doing so.

**B.     The ALJ did not Err in Weighing the Medical Opinion Evidence**

Plaintiff argues the ALJ erred in weighing the medical opinion evidence from four providers: (1) evaluating psychologist Dr. Roland Dougherty, Ph.D.; (2) treating psychologist Dr. Andrew Whitmont, Ph.D.; (3) occupational therapist Jackie Earl; and (4) nurse practitioner Lisa Rutherford, ARNP. ECF No. 11 at 9-14. Plaintiff also appears to argue that the ALJ failed to adequately consider the Department of Labor & Industries' pension determination. *Id.* at 14-15.

**1.     Legal standards**

Title II's implementing regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining physicians). *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001); *see* 20 C.F.R. § 404.1527(c)(1)-(2). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a nonexamining physician's.

*Holohan*, 246 F.3d at 1202. In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over those of non-specialists. *Id.*

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.*

The ALJ satisfies the specific and legitimate standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his [or her] interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (internal quotation marks omitted). In contrast, an ALJ fails to satisfy the standard when he or she "rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his [or her] conclusion." *Id.* at 1012-13.

///

### 2.      Dr. Roland Dougherty, Ph.D.

Dr. Dougherty is an examining psychologist who evaluated Plaintiff in March 2015. AR 1048-1060. Dr. Dougherty diagnosed Plaintiff with adjustment disorder with depression and anxiety, chronic pain syndrome, and chronic pain. AR 1052.  He opined that Plaintiff's prognosis was fair. AR 1053. He noted that Plaintiff had no difficulty answering questions, had good social skills, and that Plaintiff's thinking was logical and goal-directed. AR 1053. He believed Plaintiff was able to do detailed and complex tasks, accept instructions from supervisors, and interact with coworkers and the public. AR 1053. He also thought Plaintiff would be able to continue to do these things going forward. AR 1053. The ALJ gave significant weight to this portion of Dr. Dougherty's opinion and incorporated it into the residual functional capacity. *See* AR 27, 33.

However, the ALJ gave less weight to other portions of Dr. Dougherty's testimony, which Plaintiff argues was error. *See* AR 34. Dr. Dougherty also opined that the primary reason Plaintiff could not work was his pain syndrome. AR 1053. Dr. Dougherty believed that if Plaintiff's pain were alleviated, his depression would decrease and he would have no difficulty completing a normal workday/workweek. AR 1053. However, Dr. Dougherty opined that at the time of his evaluation, Plaintiff's depression and intermittent anxiety could interfere with gainful employment, as well as affect his ability to deal with stress. AR 1053-54.

Because Dr. Dougherty was an examining psychologist whose opinion was contradicted, the ALJ had to provide specific and legitimate reasons for discounting it. *Bayliss*, 427 F.3d at 1216.

Here, the ALJ did. First, the ALJ reasoned that Dr. Dougherty reviewed almost no medical records from any other provider as part of his evaluation, which would have indicated that Plaintiff was less limited than he reported.[3] AR 34. A doctor's failure to review other medical records in a case is a basis to discount that doctor's opinion. *Bayliss*, 427 F.3d at 1217.

Secondly (and relatedly), the ALJ reasoned that Dr. Dougherty's additional work restrictions did not appear to be based on any objective evidence but rather entirely on Plaintiff's self-reports of his physical pain symptoms, which as discussed above, the ALJ did not find credible. AR 34; *see supra* p. 9-14. Had Dr. Dougherty reviewed Plaintiff's medical records, for example, he would have known that Plaintiff was only taking minimal pain medication at the time of the evaluation, AR 34, 939, 1075, 1082—indicating that he may have overestimated the debilitating effects of Plaintiff's pain. Accordingly, the ALJ appropriately rejected the portions of Dr. Dougherty's opinion that were based on Plaintiff's self-reported diagnoses and symptoms, which the ALJ did not find credible. *See*

---

[3] The only medical record Dr. Dougherty reviewed was one chart note from an appointment Plaintiff had in December 2014. *See* AR 1050.

*Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014); *Burkey v. Colvin*, 284 F. Supp. 3d 420, 425 (W.D.N.Y. 2018). An ALJ may discount even a treating psychologist's opinion about a claimant's psychological limitations if that opinion rests on the claimant's self-reports of his or her physical ailments. *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997). To the extent the ALJ finds that the claimant's self-reports are exaggerated, the ALJ may determine that the physician's opined psychological limitations are unreliable as well. *Id.*

Finally, the ALJ noted that Plaintiff's pain could be severely reduced if he took his prescribed pain medication, instead of only the muscle relaxer, Tylenol, and ibuprofen. AR 34. An impairment that can be controlled effectively with treatment is not disabling for Social Security purposes. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Given that Plaintiff's subjective pain was the basis for Dr. Dougherty's work restrictions, the ALJ properly discounted Dr. Dougherty's opinion to the extent that pain could be effectively controlled.

Plaintiff argues that the ALJ erred in giving significant weight to portions of Dr. Dougherty's opinions, while giving less weight to other portions. ECF No. 11 at 12. This was entirely proper. *See Magallanes v. Bowen*, 881 F.2d 747, 753–754 (9th Cir. 1989) (an ALJ does not have to adopt a physician's opinion in its entirety

and can properly reject portions of it); *accord Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988).

Because the ALJ offered specific and legitimate reasons for discounting a portion of Dr. Dougherty's opinion, the Court finds the ALJ did not err.[4]

### 3. Dr. Andrew D. Whitmont, Ph.D.

Dr. Whitmont was a treating psychologist who Plaintiff saw for psychotherapy between January 2014 and June 2014. AR 745-756. Dr. Whitmont diagnosed Plaintiff with major depressive disorder and pain disorder, which was associated with psychological factors and also a general medical condition. AR 755. He also concluded that Plaintiff had a Global Assessment of Functioning (GAF) score of 45, which indicated severe impairment in functioning. AR 756. Dr. Whitmont did not believe Plaintiff's depression interfered with his ability to work—rather, he believed Plaintiff's depression was a result of him being unemployed. AR 748. By the end of Plaintiff's psychotherapy treatment, Dr. Whitmont believed Plaintiff had "pull[ed] himself out of his depression," but that Plaintiff's pain disorder prevented him from returning to work. AR 745-46.

---

[4] The ALJ also discounted portions of Dr. Dougherty's opinion on the grounds that: (1) Dr. Dougherty failed to address how the recent death of Plaintiff's mother may have impacted his testing; and (2) Dr. Dougherty did not explain the apparent inconsistency of his conclusions with a Global Assessment of Functioning (GAF) score of 60. AR 34. Given the longitudinal record of Plaintiff's mental health treatment and the ALJ's finding that GAF scores are unreliable, these grounds were likely improper. However, the other specific and legitimate reasons outlined above each independently support discounting Dr. Dougherty's opinion.

Because Dr. Whitmont was a treating psychologist whose opinion was contradicted, the ALJ again had to provide specific and legitimate reasons for discounting it. *Bayliss*, 427 F.3d at 1216.

The ALJ assigned minimal weight to Dr. Whitmont's opinion. AR 33. First, the ALJ reasoned that his opinion was internally inconsistent with respect to whether Plaintiff's depression prevented Plaintiff from working, and was also externally inconsistent with Plaintiff's overall treatment history for depression. AR 33. It seems the ALJ misinterpreted Dr. Whitmont's opinion— Dr. Whitmont only believed Plaintiff's *pain disorder* prevented him from working; not his depression. AR 745.

However, the ALJ also offered another reason: he discounted Dr. Whitmont's opined limitations for the exact same reason he discounted Dr. Dougherty's—they were not based on any objective evidence but rather were based entirely on Plaintiff's self-reports of his physical pain symptoms. AR 33; *see* AR 755 (describing results of pain diagram). As discussed in detail above, this was a specific and legitimate reason to discount the opinion. *See supra* p. 9-14, 17-19.

The ALJ also gave Dr. Whitmont's GAF scores—which ranged from 35 to 60—very little weight for three reasons. AR 34. First, the ALJ found that the scores rely too much on a person's self-reported symptomology and Plaintiff was

not credible.[5] AR 34. Second, the ALJ reasoned that the latest version of the *Diagnostic and Statistical Manual of Mental Disorders* got rid of the GAF scale due to its "conceptual lack of clarity" and "questionable psychometrics." AR 34; *see* AMERICAN PSYCHIATRIC ASS'N, *Diagnostic & Statistical Manual of Mental Disorders*, 16 (5th ed. 2013) (DSM-5). Finally, the ALJ noted that the Commissioner has determined that the GAF scale has no "direct correlation to the severity requirements" in the Social Security Administration's mental disorders listings.[6] AR 34-35 (quoting 65 Fed.Reg. 50,746, 50,765 (Aug. 21, 2000)); *see McFarland v. Astrue*, 288 F. App'x 357, 359 (9th Cir. 2008).

The Ninth Circuit has held that ALJs do not err when they decline to address medical providers' GAF scores, given that a GAF score is merely a rough estimate of an individual's psychological, social, or occupational functioning used to reflect an individual's need for treatment, but it does not have any direct correlative work-related or functional limitations. *See Hughes v. Colvin*, 599 Fed. Appx. 765, 766 (9th Cir. 2015); *Garrison v. Colvin*, 759 F.3d 995, 1003 n.4 (9th Cir. 2014). Even more importantly, neither Dr. Dougherty nor Dr. Whitmont relied on or even

---

[5] Plaintiff argues that this reason was improper because he had "consistently and accurately reported his condition" and there was no basis to believe his symptoms would be unreliable. ECF No. 11 at 12. Given that the record contains evidence of malingering, *see supra* p. 9-10, this is inaccurate.

[6] This appears to no longer be the case, as the Social Security Administration has since published an administrative message stating, "We consider a GAF rating as opinion evidence." SSA Administrative Message 13066 (effective July 22, 2013); *see also Craig v. Colvin*, 659 F. App'x 381, 382 (9th Cir. 2016).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 21**

mentioned their GAF scores in assessing Plaintiff's work limitations—rather, they relied on their perceptions of Plaintiff's pain disorder/pain syndrome. AR 745-756, 1053-54. Thus, because their GAF scores in these circumstances are immaterial and not part of a broader opinion regarding any corollary limitations, the ALJ did not err in giving them little weight. *See Jones v. Colvin*, 634 F. App'x 168, 170 (9th Cir. 2015) (holding that ALJs may give GAF scores minimal weight in the face of other conflicting record evidence); *Lopez v. Comm'r of Soc. Sec.*, No. 1:16-CV-00842-EPG, 2017 WL 6405624, at *2 (E.D. Cal. Dec. 14, 2017).

### 4. Nonmedical "Other Source" Opinions

#### a. Lower legal standard

Importantly, the "specific and legitimate" standard analyzed above only applies to evidence from "acceptable medical sources." *Molina*, 674 F.3d at 1111. These include licensed physicians (*e.g.*, Dr. Walby), licensed psychologists (*e.g.*, Dr. Marks), and various other specialists. *See* former 20 C.F.R. §§ 404.1513(a) (2014).

"Other sources" for opinions—such as nurse practitioners, physician's assistants, therapists, teachers, social workers, chiropractors, and other nonmedical sources—are not entitled to the same deference as acceptable medical sources.[7]

---

[7] For claims filed on or after March 27, 2017, licensed nurse practitioners and physician assistants can qualify as acceptable medical sources in certain situations. *See* 20 C.F.R. § 404.1502(a)(7)-(8). Plaintiff filed his claim in 2014, so this does not apply here.

*Molina*, 674 F.3d at 1111; *Dale v. Colvin*, 823 F.3d 941, 943 (9th Cir. 2016); *see* 20 C.F.R. § 404.1527(f). ALJs must consider nonmedical sources' lay observations about a claimant's symptoms or how an impairment affects ability to work. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). An ALJ may discount a nonmedical source's opinion by providing reasons "germane" to each witness for doing so. *Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

### b.    Jackie Earl, O.T.

Jackie Earl is an occupational therapist who treated Plaintiff between June 2013 and October 2014. AR 807-933. In April 2014, Ms. Earl performed a functional capacity evaluation (FCE) on Plaintiff and concluded that he was unable to return to work on a full-time basis at that time. AR 855. She opined that Plaintiff had difficulty carrying, lifting, pushing, and pulling, and also required positional changes throughout the evaluation. AR 855. She concluded that Plaintiff demonstrated skills within the sedentary-light physical demand category, but could not tolerate fulltime work due to his limitations. AR 855.

Later, in October 2014, Ms. Earl evaluated Plaintiff again as part of his discharge from a work conditioning program. AR 807. After this evaluation, she concluded that Plaintiff demonstrated improved skills within the light physical demand category. AR 808. However, she noted that Plaintiff did not "see himself

returning to work," that he "demonstrated a recent attitude of hopelessness," and that he was "resigned to significant limitations." AR 808. She concluded that he was unemployable in part due to his "overall disability outlook." AR 808.

The ALJ assigned minimal weight to Ms. Earl's opinions and gave two germane reasons for this decision. *See* AR 32. Plaintiff, however, does not challenge either of these two reasons. *See* ECF No. 11 at 9-11. Rather, Plaintiff argues that the ALJ should have considered Ms. Earl's findings from the April 2014 FCE in determining his residual functional capacity, as opposed to Ms. Earl's most recent findings at the end of his treatment. ECF No. 11 at 10-11.

An ALJ may consider evidence of improvement with treatment when weighing medical opinions. *Thomas*, 278 F.3d at 957; *Amy S. v. Berryhill*, No. C18-0427-MAT, 2018 WL 6042315, at *4 (W.D. Wash. Nov. 19, 2018). Although Plaintiff argues that the ALJ should have relied on the April 2014 evaluation, that evaluation was done early in Plaintiff's treatment and thus did not reflect the improvement in Plaintiff's condition evidenced by subsequent treatment records. *See Abrahamson v. Colvin*, No. 2:14-CV-00308-RHW, 2016 WL 498067, at *6 (E.D. Wash. Feb. 8, 2016) (Whaley, J.). As detailed above, *supra* p. 10-11, Plaintiff's post-surgery treatment records indicate that his condition improved dramatically. In light of the significant improvement in Plaintiff's condition subsequent to Ms. Earl's April 2014 FCE, the ALJ properly relied on her most

recent medical records, as these most accurately reflected Plaintiff's true

limitations. *See Abrahamson*, 2016 WL 498067, at *6.

### c. Lisa Rutherford, ARNP

Lisa Rutherford is a nurse practitioner who Plaintiff saw for primary care

starting around the time of his industrial injury in fall 2012 and continuing through

when he was awarded a pension in November 2015. AR 939-1043, 1070-1084. She

opined that Plaintiff was incapable of even sedentary exertion, and that Plaintiff's

condition was permanent. AR 953, 973, 976, 980, 985, 988, 990, 997, 1072, 1077,

1081.

The ALJ did not state specifically how much weight he assigned to Nurse

Rutherford's opinions, but he did not find them persuasive. *See* AR 32. The ALJ

offered a germane reason for this decision, reasoning that Nurse Rutherford's

opined limitations were inconsistent with her contemporaneous examination

findings. AR 32.  On occasions that Nurse Rutherford examined Plaintiff, she

found only "mild decreased" lumbar range of motion, no palpable tenderness, and

negative straight leg raise tests. AR 977, 991. A discrepancy between a doctor's

recorded observations and opinions is a clear and convincing reason (and therefore,

necessarily also a "germane" reason) for not relying on that opinion. *Bayliss*, 427

F.3d at 1216. Therefore, the ALJ did not err in discounting Nurse Rutherford's

opinion.

### 5. Department of Labor & Industries' Pension Determination

Plaintiff also argues that the ALJ failed to adequately consider the Washington Department of Labor & Industries' determination that awarded him a pension. ECF No. 11 at 14-15. He argues this was "persuasive evidence" of disability. *Id.* at 15. However, as the ALJ correctly noted and Plaintiff also appears to concede, the state workers' compensation system and the Social Security Administration have different legal standards, regulatory evaluations, and processes to determine disability, and a Labor & Industries decision does not bind an ALJ. *See* AR 33; 20 C.F.R. § 404.1504.

## C. The ALJ did not Improperly Assess Plaintiff's Residual Functional Capacity by Failing to Include all his Restrictions

Plaintiff briefly argues that the ALJ's residual functional capacity determination did not account for all of his limitations. ECF No. 11 at 15. Specifically, he argues the ALJ did not incorporate his impairments as opined by Ms. Earls, Nurse Rutherford, Dr. Dougherty, or Dr. Whitmont. ECF No. 11 at 15-17. The Court disagrees.

When determining Plaintiff's residual functional capacity, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence." AR 27. The ALJ included all of Plaintiff's limitations, and the only omitted limitations were those that the ALJ found did not exist.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 26**

Plaintiff's argument here that the residual functional capacity did not account for all his limitations essentially just restates his prior arguments that the ALJ should not have rejected the opinions of his medical providers. Courts routinely reject this argument. *See Stubbs-Danielson*, 539 F.3d 1169, 1175-76 (9th Cir. 2008); *Rollins*, 261 F.3d at 857. Because the ALJ included all of the limitations that he found to exist, and because substantial evidence supports those findings, the ALJ did not err in omitting the other limitations that Plaintiff claims, but failed to prove. *See Rollins*, 261 F.3d at 857. Accordingly, the ALJ properly determined Plaintiff's residual functional capacity.

**D.     The Medical-Vocational Guidelines (Grid) Rule 201.10 is Inapplicable**

Finally, Plaintiff argues that if the Court finds that he is limited to sedentary work, Medical-Vocational Rule 201.10 is applicable. This rule yields a decision of "disabled" when the claimant is limited to sedentary work, between the ages of 50 and 54, has limited education, and has previous skilled or semi-skilled work that is not transferable. 20 C.F.R. § Pt. 404, Subpt. P, App. 2.

However, as discussed above, the ALJ found that Plaintiff can perform light work as defined in 20 C.F.R. 4041567(b) and substantial evidence supports this finding. *See* AR 27. Thus, Rule 201.10—which only applies to sedentary work—is inapplicable. The appropriate rule would be Rule 202.11, which applies to claimants capable of light work, who are between the ages of 50 and 54, who have

limited or less education, and have previous skilled or semi-skilled work that is not transferable. 20 C.F.R. § Pt. 404, Subpt. P, App. 2. This rule, however, yields a decision of "not disabled." *Id.*

### VIII. Order

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and is free from legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED.**

3. Judgment shall be entered in favor of Defendant and the file shall be **CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel, and **close the file**.

**DATED** this 29th day of March, 2019.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge